RAY WOMBLE, ADMINISTRATOR OF RUBY WILBORN COTTON, DECEASED.
v. JOHN BRUCE MORTON

No. 68SC85

(Filed 14 August 1968)

**1. Automobiles §§ 51, 88; Death § 7— wrongful death action —negligence, contributory negligence, damages — sufficiency of evidence**

In an action for wrongful death, evidence tending to show that decedent and her husband were looking for decedent's pocketbook along the road in front of their home, that while decedent's husband was on the south side of the road and decedent was in the westbound lane, defendant's truck approached them in the eastbound lane, skidded into the westbound lane and struck decedent, that defendant's truck was going more than 50 miles per hour after it started skidding, that it skidded for 200 feet, 60 of which were sideways, with thick smoke coming from its tires, that the speed limit was 55 miles per hour, that prior to death decedent was 52 or 53 years old, in good health, and worked regularly in a store, *is held* sufficient to require submission to the jury of the issues of negligence, contributory negligence, and damages.

**2. Trial § 33— misstatement of evidence in charge — duty to call court's attention thereto**

When the court's statement of the evidence does not correctly reflect the testimony of a witness in any particular respect, it is the duty of counsel to call attention thereto and request a correction.

**3. Appeal and Error § 31— misstatement of evidence in charge — failure to object — waiver of question on appeal**

In an action for wrongful death, failure to call to the court's attention during the trial a misstatement in the court's recapitulation of the evidence as to the speed that a witness had testified defendant's vehicle was traveling is a waiver of the right to have the misstatement considered on appeal.

**4. Automobiles § 51— negligence — excessive speed — sufficiency of evidence**

In an action for wrongful death, an instruction submitting the issue of defendant's negligence in operating his motor vehicle on the highway at a greater rate of speed than 55 miles per hour *is held* supported by evidence that defendant's vehicle skidded more than 200 feet and that for 60 feet of that distance it skidded sideways, that thick smoke came from its tires, and that it was going 50 miles per hour after it had started skidding.

**5. Trial §§ 33, 35— instructions — use of term "evidence tending to show"**

The court's use in the charge of the terms "has offered evidence in substance tending to show" and "offered evidence tending further to show" is not an expression of opinion in violation of G.S. 1-180.

**6. Automobiles §§ 40, 83, 90— contributory negligence of pedestrian — failure to yield right of way — instructions**

In an action for the wrongful death of a pedestrian, an instruction that the failure of plaintiff's intestate to yield the right of way to defendant's

vehicle "should be taken into consideration, together with all of the other facts and circumstances" upon the question of the pedestrian's negligence, while disapproved for failure of the court to instruct that it should be taken into consideration "as evidence," will not be held prejudicial error since a pedestrian's failure to yield the right of way is not contributory negligence *per se*, but is only evidence thereof to be considered with the other evidence.

**7. Trial §§ 32, 38— jury informed that instructions given at party's request**

Action of the court in informing the jury that particular instructions were given at the request of plaintiff's attorney, although disapproved, will not be held prejudicial error where the court further instructed the jury that they should attach no more importance to such instructions than to any other part of the charge.

APPEAL by defendant from *Bone, E.J.,* 11 December 1967 Civil Session of Superior Court of HARNETT County.

Plaintiff, administrator of the estate of Ruby Wilborn Cotton, instituted this action for the recovery of damages for the wrongful death of plaintiff's intestate allegedly caused by the actionable negligence of the defendant, John Bruce Morton, in the operation of his automobile on 25 October 1965.

The pleadings raise the following issues which the judge submitted and the jury answered as herein indicated:

"FIRST: Was plaintiff's intestate killed by the negligence of the defendant, as alleged in the Complaint?

Answer: YES

SECOND: If so, did plaintiff's intestate by her own negligence contribute to her death?

Answer: No

THIRD: What damages, if any, is plaintiff entitled to recover of defendant?

Answer: $8,000.00"

From the judgment in accordance with the verdict, the defendant appealed.

*Morgan & Jones by Robert H. Jones for plaintiff appellee.*

*Young, Moore & Henderson by J. C. Moore for defendant appellant.*

MALLARD, C.J.

In the record on appeal the defendant appellant has fifty exceptions and forty assignments of error he brings forward and states in

his brief that there are only two questions involved which he states in the following manner:

"(1)   Did the trial Court err in failing to allow defendant's motion for nonsuit either because:

(a)   There was no evidence that defendant was negligent?; or

(b)   Plaintiff's intestate was contributorily negligent as a matter of law?

(2)   If not, is defendant entitled to a new trial for error in the charge?"

FAILURE TO NONSUIT

The evidence disclosed that on 25 October 1965 plaintiff's intestate, Ruby Wilborn Cotton, was in good health, worked regularly at a store in Lillington, and was 52 or 53 years of age. She and her husband lived on Highway #27 West of Lillington. Their home was located on the north side of the highway which at that point extended generally East and West. A driveway extended from the highway to their home. The highway was straight for three or four-tenths of a mile West of the Cotton home. It was a paved road, twenty feet wide, with shoulders about five feet wide, and with a maximum speed limit of 55 miles per hour posted in that area.

On 25 October 1965 at about 6:45 or 7:00 a.m. John Smith was traveling West on Highway #27 and saw Mr. and Mrs. Cotton on the south shoulder of the road across the highway from their home. Both of them appeared to be looking for something. As John Smith proceeded West on the highway, he met a pickup truck. Smith testified:

"After I passed him, I don't know how long it had been after I passed him, but I looked at my rear view mirror and I saw the smoke started up. In other words, it appeared to be from the tires when he went into a skid. I was about halfway between Charlie's house and Mr. Neese's residence. I would say I looked in my mirror maybe a minute or two minutes after I passed them. As to how far behind me at the time I saw it in the mirror, well, he was away, I would say halfway between where I was at and Mr. Charlie's house. The smoke that I saw coming from the tires was thick. In other words, when the smoke went to coming off the tires, then he went into a skid and that was it; I couldn't see any more because the smoke was so thick. I was not able to judge the speed of the vehicle at the time I saw it."

Charlie Cotton, the husband of plaintiff's intestate, testified in substance, except where quoted, that the night before this occurrence his wife had left her pocketbook on the trunk of the car. He had taken the car to the garage, and the pocketbook fell off when he drove out in the road. The next morning he and his wife went out there to look for the pocketbook. Mr. Cotton was on the south side of the road. He testified:

"I did not see the truck that was being driven by the defendant coming until I heard the tires start squealing. When I heard the tires start squealing, I turned my head and glanced at my wife and she was about halfway between the yellow line and the shoulder of the road on the left side of the road, that is the north side of the road. That was in the westbound lane.

As to whether I saw the truck when I heard it, I glanced first at my wife when I turned, I looked at her. Then I turned off and saw the truck coming down the road skidding. The truck skidded straight for a good distance, then it commenced varying to the left and skid across the yellow line, the front wheels went over on the shoulder of the road about thirty feet from where it hit her at. Then it slid right sideways and hit the dirt right straight towards her.

The right rear fender of the truck struck my wife. After I heard the skidding, I saw the truck until it struck my wife. I was looking right straight at my wife when she was struck. At the time she was struck, she was about 16 inches from the edge of the hard surface on the north side of the road when facing the house. The front wheels of the truck were up in my driveway and the back wheels of the truck were about 12 inches from the edge of the hard surface."

Mr. Cotton, after stating that he had an opinion satisfactory to himself as to the speed of the truck while it was skidding, replied, "My opinion was, he was going, he was doing better than fifty miles per hour." The skid marks extended approximately two hundred feet. At the beginning there were two skid marks and this "went to sideways, then there was four marks." The four marks extended about sixty feet. When the right rear fender of the truck struck his wife, "it took her off the ground and she went into a spin" for twenty or twenty-five feet, fell to the ground, and slid into the ditch. She didn't move any after that. She was dead.

The defendant offered no evidence.

[1]   We conclude that the evidence is sufficient to withstand de-

*fendant's* motion for nonsuit and to require submission to the jury of the issues of negligence, contributory negligence, and damages.

### Charge of the Court

Defendant contends that the court committed error in the recapitulation of the evidence in stating that the witness Cotton "testified that in his opinion when he saw the truck of the defendant up the road, skidding, that it was going faster than fifty-five miles per hour," when in fact the witness stated that "he was doing better than fifty miles per hour." The court, in its charge, correctly instructed the jury:

> "I only state the substance of the evidence for the purpose of enabling me to apply and explain the law. You are the judges of what the evidence was and you will go by your recollection of it. If your recollection of the evidence differs from mine or that of counsel for either side, you will disregard our recollection and be guided by your own. The law makes you the judges of what the evidence was and of the weight and credibility of each part of it and you are to determine from the evidence what the facts are and then applying the law as the court explains it to you, render your verdict accordingly."

[2, 3] When the court's statement of the evidence in condensed form does not correctly reflect the testimony of the witnesses in any particular respect, it is the duty of counsel to call attention thereto and request a correction. *Steelman v. Benfield,* 228 N.C. 651, 46 S.E. 2d 829. It does not appear that this misstatement of the evidence was called to the attention of the court at any time during the trial. The failure to do so in this case is a waiver of any right to have it considered on appeal. *Ward v. R. R.,* 224 N.C. 696, 32 S.E. 2d 221; *State v. Lambe,* 232 N.C. 570, 61 S.E. 2d 608; *State v. Cornelius,* 265 N.C. 452, 144 S.E. 2d 203.

[4] Defendant contends that the court committed error in charging the jury, as follows:

> "In the first place, the law imposed upon the defendant the duty not to operate his motor vehicle upon the highway at a greater rate of speed than fifty-five miles per hour."

This contention is without merit when the following circumstances indicative of speed are considered. The witness Smith testified that the defendant's vehicle was obscured by smoke coming from its tires. The witness Cotton testified that the defendant's vehicle skidded approximately two hundred feet and that for about sixty

feet of that distance it was skidding sideways. The witness Cotton also testified that in his opinion the defendant's vehicle was going at a speed of over fifty miles an hour when he saw it *after* he heard it and *after* it was skidding. We are of the opinion that these circumstances taken in connection with other evidence relating to speed is sufficient for submission to the jury on the question of speed in excess of fifty-five miles per hour.

The defendant contends, but cites no authority except G.S. 1-180 in support thereof, that the court expressed an opinion and committed error in the use of the following language in its charge in connection with the statement of the evidence:

"In this case, the plaintiff has offered evidence in substance tending to show," and

"The plaintiff offered evidence tending further to show," and

"Plaintiff has offered evidence tending further to show." ·

[5] Defendant contends that the court failed to explain what was meant by the term "the evidence tended to show" and failed to explain that what the evidence did show was solely the province of the jury. This contention is without merit. The court adequately charged that the jury were the judges of what the evidence was and of its weight and credibility. The use of the terms "has offered evidence in substance tending to show" and "offered evidence tending further to show" is not an expression of opinion in violation of G.S. 1-180. *Thompson v. Davis*, 223 N.C. 792, 28 S.E. 2d 556.

Defendant contends that the court failed to state the evidence necessary to explain the application of the law thereto and also contends in several assignments of error that the court failed to adequately charge the jury with respect to the second issue relating to contributory negligence.

[6] The defendant asserts that the court failed to inform the jury that the failure of plaintiff's intestate to yield the right of way to him in the following portion of the charge would be "evidence" of contributory negligence:

"(S)o under the uncontradicted evidence in the case, it was the duty of the plaintiff's intestate to yield the right of way to the defendant's approaching vehicle; however, under the law, if she failed to do that, that would not per se or in itself be negligence, *but should be taken into consideration, together with all of the other facts and circumstances appearing in the case, in determining whether she was guilty of negligence or not.*" (Emphasis Added.)

Although the court did not use the words "it should be taken into consideration *as evidence*," and while we do not approve of the omission thereof, we are of the opinion that the failure to use the words "as evidence" was not prejudicial in this case, as a pedestrian's failure to yield the right of way is not contributory negligence *per se*, but only evidence thereof for consideration with other facts and circumstances. *Moore v. Bezalla*, 241 N.C. 190, 84 S.E. 2d 817.

The charge when read as a whole contains an adequate summary of all the necessary evidence on all the issues. The law with respect to contributory negligence was properly stated and applied to the evidence.

[7]  Defendant contends that the court committed error by giving in substance particular instructions requested by the plaintiff's attorney and then informing the jurors that such had been done at his request. However, after giving the requested instructions, the court also instructed the jury with respect thereto, as follows:

"I charge you, members of the jury, that the circumstances under which the instructions which I have just given you, should not lead you to believe that there should be any more importance attached to that instruction than the others which I have given you. . . .

(B)ut you should not place any emphasis upon it by reason of the circumstances under which it is given; it is simply a part of the charge that the court is giving you, and that is not to be singled out as having any more importance than any other part of the charge and you will, in arriving at your verdict, remember and consider the other parts of the charge relating upon this matter, as well as others."

We do not approve of the trial court informing the jurors that particular instructions are given at the request of a party. However, in view of the charge as a whole and particularly the further instructions given by the court with respect thereto, we are of the opinion that it was not prejudicial error in this case.

There are a number of other assignments of error, some of them to the charge of the court. We have carefully examined each one of them that has been properly brought forward in appellant's brief. None of them point to a cause for disturbing the verdict.

In the trial we find

No error.

BROCK and PARKER, JJ., concur.